STRASBURGER & PRICE, LLP
Charles "Scott" Nichols, SBN 224257
Jack G. Carnegie, Admitted Pro Hac Vice
Zachary W. Thomas, SBN 298174
909 Fannin, Suite 2300
Houston, TX 77010
Tel: (713) 951-5600
Fax: (713) 951-5660
scott.nichols@strasburger.com
zach.thomas@strasburger.com

WILLIAMS KHERKHER LAW FIRM
E. Armistead "Armi" Easterby, Admitted Pro Hac Vice
Sean McCarthy, Admitted Pro Hac Vice
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Tel: (713) 230-2200
Fax: (713) 643.6226
aeasterby@williamskherkher.com
smccarthy@williamskherkher.com

***Attorneys for Plaintiffs, and Counterclaim Defendants Bay City Surgery Center, Inc., Medical Plaza of San Pedro, Inc., PACU, Inc., Minimally Invasive Surgical Team of Glendale, Inc., and Southbay Spine Group, Inc.***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAY CITY SURGERY CENTER, INC.; MEDICAL PLAZA OF SAN PEDRO, INC.; PACU, INC.; MINIMALLY INVASIVE SURGICAL TEAM OF GLENDALE, INC.; S.H.A.R.P. TREATMENT OF SOUTH BAY, INC. AND SOUTHBAY SPINE GROUP, INC. <br><br> *Plaintiffs*, <br><br> vs. <br><br> INTERNATIONAL LONGSHORE & WAREHOUSE UNION-PACIFIC MARITIME ASSOCIATION WELFARE PLAN BOARD OF TRUSTEES; INTERNATIONAL LONGSHORE & WAREHOUSE UNION-PACIFIC MARITIME ASSOCIATION WELFARE PLAN <br><br> *Defendants*. | Case No. 2:15-cv-6209 <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS (DOC. 181)** <br><br> Judge: Hon. Michael W. Fitzgerald <br><br> 10:00 a.m. <br><br> May 10, 2018 |

| | |
|---|---|
| INTERNATIONAL LONGSHORE & WAREHOUSE UNION-PACIFIC MARITIME ASSOCIATION WELFARE PLAN BOARD OF TRUSTEES; INTERNATIONAL LONGSHORE & WAREHOUSE UNION-PACIFIC MARITIME ASSOCIATION WELFARE PLAN | § § § § § § § § § § § § § § § § § § § § § § § § § § § |
| *Counterclaimants,* | |
| vs. | |
| BAY CITY SURGERY CENTER, INC., MEDICAL PLAZA OF SAN PEDRO, INC. PACU. INC., MINIMALLY INVASIVE SURGICAL TEAM OF GLENDALE, INC., SOUTHBAY SPINE GROUP, INC., COSTAL VIEW GASTROENTEROLOGY, INC., AND COASTAL VIEW GASTROENTEROLOGY OF SOUTH BAY, INC., | |
| *Counter-Defendants.* | |

## **TABLE OF CONTENTS**

**Page**

A.   It Is Impossible To Determine Which (if any) of Defendants' Representations Were False Until After the Court Adjudicates Plaintiffs' ERISA § 502(a) Claims. ................................................................. 1

B.   Plaintiffs' Summary Judgment Evidence Raises Genuine Issues of Material Fact Regarding Whether Defendants Misrepresented Plan Coverage of Pre-Authorized Healthcare Services. ............................ 3

    1.   ICM's Pre-Authorization Letters, Coupled with Plaintiffs' Verifications that Patients Were Eligible for Plan Benefits, Evidence the "Who," "What," "When," "Where," and "How" of Defendants' Representations. ................................ 3

    2.   Defendants' Explanations of Benefits Denying Plan Coverage of Pre-Authorized Healthcare Services Raise a Fact Question Regarding the Falsity of Defendants' Representations. ......................... 8

    3.   Defendants' Misrepresentations Concern Past or Existing Material Facts, Not Future Conduct. ................................. 10

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS (DOC. 181)**    **Page ii**

3230660.1/SPH/31974/0102/041118

1
2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**CASES**

5

*Memorial Hospital v. Northbrook Life Insurance,*
    904 F.2d 236 (5th Cir. 1990) ...............................................................11

6

7

*The Meadows v. Employers Health Insurance,*
    47 F.3d 1006 (9th Cir. 1995) ..............................................................10

8

**STATUTES**

9

10

ERISA § 502(a)...........................................................................1, 2, 3, 4, 10

11

ERISA § 514(a)...............................................................................4, 5, 6, 8

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

To the Honorable Michael W. Fitzgerald:

Plaintiffs Bay City Surgery Center, Inc., Medical Plaza of San Pedro, Inc., PACU, Inc., Minimally Invasive Surgical Team of Glendale, Inc., S.H.A.R.P. Treatment of South Bay, Inc., and Southbay Spine Group, Inc. oppose the Motion for Partial Summary Judgment as to Plaintiffs' Fraud and Negligent Misrepresentation Claims Due to Lack of Evidence and ERISA Preemption filed by Defendants ILWU-PMA Welfare Plan Board of Trustees and ILWU-PMA Welfare Plan (the "Plan") (Doc. 181), and respectfully show as follows:

**A.     It Is Impossible To Determine Which (if any) of Defendants' Representations Were False Until After the Court Adjudicates Plaintiffs' ERISA § 502(a) Claims.**

In its Order denying in part Defendants' FRCP 12(b)(6) motion to dismiss Plaintiffs' claims, the Court recognized that Plaintiffs' fraud and negligent misrepresentation claims are pleaded in the alternative, and are not ERISA-preempted insofar as those claims are based on alleged representations that the Plan covered the services at issue and "it is later determined that there is no coverage for the procedures Plaintiffs performed." Doc. 35 at 18.  In so holding, the Court explained as follows:

- Plaintiffs' fraud and negligent misrepresentation claims "are brought in the alternative to the benefits claim under [ERISA] § 502, and would become viable *only if it is later determined that there is no coverage for the procedures Plaintiffs performed.*" *Id.*

- "Because the fraud claims are pleaded in the alternative, they necessarily concern procedures and conduct outside the scope of the Plan.  Therefore, *if those claims were to become viable*, the existence of the Plan would be irrelevant, much less essential to the resolution of the dispute." *Id.* at pp. 18-19.

- "*[I]f it is determined that Plaintiffs are not entitled to benefits under § 502(a)*, then no interpretation, or even reference to, the plan instrument would be necessary to determine whether the Plan committed fraud." *Id.* at p. 21.  Indeed, Plaintiffs' fraud and negligent misrepresentation claims exist only

where the Plan induced Plaintiffs to provide services under the false pretense that Plan benefits were payable when, in fact, they were not.  Thus, no "Plan benefits" are at issue in these claims.  To the extent the Plan refused to pay payable Plan benefits, the

---

claim is asserted in Plaintiffs' First Cause of Action for Plan benefits under ERISA § 502(a).

In every case, Plaintiffs first called the Plan to verify that their patients were covered by the Plan and eligible to receive Plan benefits.  Then, where necessary, Plaintiffs obtained pre-authorization that specific services to be performed were authorized and covered by the Plan.  Relying upon the Plan's representations that the patients were eligible and the services were authorized and covered by the Plan, Plaintiffs performed the services.  Subsequently, Defendants denied Plaintiffs' claims for payment, citing in the explanations of benefits they sent to Plaintiffs a variety of excuses, including that the services are not, in fact, covered by the Plan.  If Defendants' explanations of benefits are correct that the services are not covered, then it follows that the representations in the pre-authorization letters that the services *were* covered were false.  Defendants' explanations of benefits are sufficient to raise a fact question as to whether Defendants misrepresented Plan coverage for the healthcare services that Plaintiffs performed.

Before it can be determined whether a particular claim represented to be covered is, in fact, covered by the Plan and therefore falls under ERISA, or is not covered and therefore is a purely common law tort claim, Defendants must state whether and to what extent they dispute Plan coverage for a particular patient or service.  *If Defendants confirm that all of the patients and services at issue are covered by the Plan, then Plaintiffs will agree to dismissal of their fraud and negligent misrepresentation claims, and proceed only on their claims under ERISA.*

Defendants, however, have not conceded that any specific patients or services are covered by the Plan.  Defendants certainly have not come forward with any summary judgment evidence showing that particular patients or services are (or are not) covered.  Thus, the issue of whether a particular patient or service is, in fact, covered by the Plan is a fact question that cannot be decided on summary judgment.

Plaintiffs' ERISA § 502(a) claims for Plan benefits should be decided by the Court after a bench trial. As the Court previously recognized, Plaintiffs' fraud and negligent misrepresentation claims based on representations regarding Plan coverage for healthcare services will only proceed to the jury in the event the Court first determines that certain patients or services were not, in fact, covered by the Plan. *See* Doc. 35 at p. 19 ("Whether Plaintiffs, as their patients' assignees, are entitled to benefits under the Plan will be decided under § 502(a) and the 'uniform' body of benefits law. *Only after that issue is resolved* would the Court or the jury consider Plaintiffs' fraud claims…."). Thus, Defendants' motion for partial summary judgment on Plaintiffs' fraud and negligent misrepresentation claims is premature and should be denied.

**B.    Plaintiffs' Summary Judgment Evidence Raises Genuine Issues of Material Fact Regarding Whether Defendants Misrepresented Plan Coverage of Pre-Authorized Healthcare Services.**

Regardless, Plaintiffs' summary judgment evidence at least raises a genuine issue of material fact as to whether Defendants misrepresented that particular patients were covered by the Plan when, in fact, they were not, or that particular services were covered by the Plan (and thus would be reimbursed in accord with Plan terms) when, in fact, they were not. The Court should further deny summary judgment on this basis.

**1.    ICM's Pre-Authorization Letters, Coupled with Plaintiffs' Verifications that Patients Were Eligible for Plan Benefits, Evidence the "Who," "What," "When," "Where," and "How" of Defendants' Representations.**

Defendants do not dispute Plaintiffs' allegation that "the Plan or its agents … pre-authorized the services as medically necessary and the Plan's agents instructed the Plan to make payment." Doc. 181 at p. 3 (citing UMF No. 10) Indeed, in all instances where pre-authorization was required by the Plan (and even in many instances where pre-authorization was not required), Plaintiffs obtained pre-

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS (DOC. 181)**    Page 3

3230660.1/SPH/31974/0102/041118

authorization that their healthcare services were medically necessary and payable by the Plan from the Plan's agent for evaluation and pre-authorization of medical procedures, Innovative Care Management ("ICM"). Exs. A and B.  Once ICM authorized healthcare services as medically necessary and covered by the Plan, ICM mailed an authorization letter to the provider Plaintiff with CPT codes and dates to perform the services. *Id.*  Each of the ICM letters received by Plaintiffs states in pertinent part:

> An Innovative Care Management registered nurse has reviewed and authorized your requested medical services under the terms of the Coastwise Indemnity Plan subject to the provisions contained in the following paragraph.
>
> ***
>
> This authorization serves as a directive to the Coastwise Claims Office to pay for the above approved services….  Benefits are subject to your eligibility at the time you receive the medical services and applicable out-of-network charges.

*See, e.g.,* Ex. A-1 and B-1.  Despite this "directive" from the Plan's retained expert, the Plan still failed and refused to pay Plaintiffs what they are owed for the pre-authorized services they performed. Ex. A, Declaration of Andrew Morris, D.C., and Ex. B, Declaration of George Tashjian, M.D.

Defendants are correct that the Court previously ruled that Plaintiffs' fraud and negligent misrepresentation claims are preempted by ERISA § 514(a) insofar as those claims are based *solely* on the ICM letters, given that they "condition coverage on the Plan members' eligibility for benefits under the Plan." Doc. 35 at p. 18.  However, the summary judgment evidence shows that *in every case* Plaintiffs orally verified Plan participants' and beneficiaries' eligibility for benefits under the Plan *before* obtaining pre-authorization from ICM. Ex. A and B.  In other words, the verification of Plan members' eligibility satisfies the condition stated in the ICM letters on which Plan coverage for the pre-authorized services was based, and removes it from the equation.

Stated another way, there were two representations by Defendants. The first was that the *patient* was covered by the Plan and eligible to receive Plan benefits. The second was that the *services* were covered by the Plan. Plaintiffs are not aware of any denials based on *patient eligibility* such that Defendants' representations of eligibility were false. However, in many instances payment was denied because *services* supposedly were not covered, which, if accurate, means the representations in the ICM letters to the contrary were false. And if in fact the services were not covered as represented then by definition neither the Plan nor ERISA is implicated and the claims are governed by state law.

As set forth in the attached declarations, prior to performing any healthcare services for a Plan participant or beneficiary, Plaintiffs Bay City Surgery Center, Inc. ("Bay City"), Medical Plaza of San Pedro, Inc. ("MPSP"), Minimally Invasive Surgical Team of Glendale, Inc. ("M.I.S.T."), S.H.A.R.P. Treatment of South Bay, Inc. ("Sharp Treatment"), and Southbay Spine Group, Inc. ("Southbay") *routinely* called the Plan for benefit eligibility and member coverage verification. *Id.* The following sets forth the general substance of the oral communications between each of those Plaintiffs and the Plan that occurred in connection with verification of coverage and benefits:

(a)     The provider's representative called the Plan's claim office in San Francisco on the Plan's toll free line set forth on the member identification card (presently, 800-955-7376);

(b)     The automated toll free line identified the answering party as the "Coastwise Claims office at Zenith American Solutions," thereby confirming to the provider's representative that the communication was with the authorized administrator for the Plan;

(c)     The automated telephone call-in line would present four "options" to the provider's representative as the caller. Option 4 prompted the caller to

"press 4" to speak to a "Representative" about questions regarding "eligibility or benefits;"

(d)    The provider's representative would "press 4" and after a typically lengthy delay (often thirty minutes or longer) a live representative of the Plan administrator would come on the line;

(e)    The providers were "out-of-network" providers to the Plan, and accordingly their representatives were calling in advance of the providers' performing services to ensure that the providers would be paid for their services by the Plan;

(f)    The provider's representative would usually speak to one of a small group of representatives of the Plan administrator;

(g)    The provider's representative would advise the Plan representative of the identity of the Plan member or dependent; the CPT code for the procedure or healthcare services to be performed; and that the purpose of the call was to verify the existence of coverage for the patient and the eligibility of the provider for payment of benefits as the service provider;

(h)    The Plan representative would review the Plan records and advise the provider about the percentage of billing covered under the Plan (typically 80%); the amount of patient deductible; and whether benefits would be payable to the provider based on the CPT code provided.

*Id.*

In most cases, the representatives of Bay City, MPSP, M.I.S.T., Sharp Treatment, and Southbay would fill out a patient insurance verification form while speaking with the Plan's representatives. *Id.* Defendants admit they are already in possession of 223 of Plaintiffs' patient insurance verification forms that Plaintiffs produced in discovery. Doc. 181 at p. 10.

1    As Defendants note in their Motion, the patient insurance verification forms

2    generally state the patient's name, insurance card number, date of birth, and Plan

3    coverage and patient responsibility amounts for procedures and services performed by

4    both in-network and out-of-network providers. UMF No. 32; *see also* Exs. A and B.

5    In addition, the insurance verification forms state the name of the provider's

6    representative who called the Plan, the date of the call, the name of the Plan

7    representative with whom the provider's representative spoke, and whether pre-

8    authorization was required. *See* Exs. A and B.

9        Contrary to Defendants' contentions, the ICM letters, coupled with the Plan's

10   verifications that the patients were eligible for Plan benefits at the time the letters were

11   mailed (thus satisfying the condition for pre-authorization and Plan coverage of the

12   services stated in the ICM letters) at least constitute a scintilla of evidence regarding

13   the "who" (the small number of Plan representatives who handled Plaintiffs' insurance

14   verification calls, many of whom are explicitly named on Plaintiffs' patient insurance

15   verification forms, and the ICM representatives who pre-authorized Plaintiffs'

16   healthcare services as medically necessary and covered by the Plan); "what" (false

17   representations regarding Plan coverage for healthcare services); "when" (between

18   2012 and 2014, soon before Plaintiffs provided the healthcare services for which they

19   are seeking affirmative relief or on the dates specified in the ICM letters); "where"

20   (the Plan's Coastwise Claims Office in San Francisco, California and ICM's office

21   where pre-authorization determinations were made); and "how" (by misleading

22   Plaintiffs into performing healthcare services) of Defendants' oral representations

23   regarding Plan coverage to Plaintiffs.

24       Plaintiffs relied to their detriment on these representations in deciding to

25   perform healthcare services for Plan participants and beneficiaries. Exs. A and B.  If

26   the Court determines that any of Plaintiffs' pre-authorized services were not, in fact,

27   covered by the Plan (for whatever reason), Defendants' representations in the ICM

28

letters that the services were authorized and covered by the Plan were false when made, and give rise to a viable fraud or negligent misrepresentation cause of action against the Plan.

**2.**   **Defendants' Explanations of Benefits Denying Plan Coverage of Pre-Authorized Healthcare Services Raise a Fact Question Regarding the Falsity of Defendants' Representations.**

As mentioned before, Defendants refuse to admit or come forward with summary judgment evidence establishing that any particular claim *was* covered by the Plan, as necessary to preclude Plaintiffs' fraud and negligent misrepresentation claims. If Defendants will certify that the claims were covered by the Plan, Plaintiffs will agree that Defendants' representations regarding Plan coverage were not false and thus Plaintiffs' fraud and negligent misrepresentation claims should be dismissed. Absent such a certification from Defendants, one must assume that Defendants dispute Plan coverage for each of the claims at issue.  Thus, there is at least a fact question as to whether Defendants' representations regarding Plan coverage stated in the ICM letters were false when made.

Plaintiffs' summary judgment evidence further raises a genuine issue of material fact as to whether Defendants' representations regarding Plan coverage for Plaintiffs' healthcare services were false when made.  In numerous instances where Plaintiffs verified a patient's eligibility for Plan benefits and obtained pre-authorization from ICM, the Plan still denied the claim, claiming that the services were not covered by the Plan. Exs. A and B.  On the explanations of benefits Defendants sent to Plaintiffs explaining the reason(s) for denial of Plaintiffs' claims, Defendants often used denial codes like "MEDNC1," meaning "Denied – the plan does not cover services that are not medically necessary"; "MEDNEC," meaning "This claim or a portion of the claim has been denied because the plan does not cover services that are not medically necessary"; "TC3DN2," meaning "Denied –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS (DOC. 181)**   Page 8

3230660.1/SPH/31974/0102/041118

1   documents did not support the service billed"; or "PHYSOS," meaning "additional
2   information required to verify coverage." Ex. A.

3          By way of example, in patient N.D.'s case, Bay City called to verify that the
4   patient was eligible for Plan benefits, according to its usual protocol set forth above.
5   *Id*. Bay City then contacted ICM to request pre-authorization to perform a spine
6   injection on the patient. *Id.* As part of its pre-authorization request, Bay City
7   submitted the office notes of N.D.'s board-certified pain management physician
8   recommending the procedure, a completed ICM-form questionnaire summarizing the
9   medical indications for the procedure, and other relevant information. Ex. A. After
10  considering the information that Bay City submitted, on October 14, 2013, ICM
11  issued its standard pre-authorization letter approving "Sacroiliac joint injection –
12  Bilateral x 1 injection each side," CPT code 27096. Exs. A and A-1. Adam
13  Weitzman, M.D. performed the pre-authorized spine injection procedure at Bay City,
14  and Bay City billed the Plan for CPT code 27096 on October 17, 2013. Exs. A and A-
15  2.

16         On December 13, 2013, Defendants issued an explanation of benefits with
17  denial code "TC3REV," meaning "under review, additional information requested
18  from provider." Exs. A and A-3. Bay City provided Defendants with all of the
19  "additional information" they requested, including the operative report from the
20  procedure. Ex. A. On April 21, 2014 (more than 6 months after the Plan was billed
21  for the procedure), Defendants issued a second explanation of benefits, this time using
22  denial code "TC3DN2," meaning "Denied – documents did not support the service
23  billed." Exs. A and A-4. In response, Bay City provided *more* information to
24  Defendants in support of the services billed. Ex. A. On May 7, 2014, Defendants
25  issued a *third* explanation of benefits, using the same "TC3DN2" denial code and also
26  denial code "MEDNC1," meaning "Denied – the plan does not cover services that are
27  not medically necessary." Exs. A and A-5. In other words, even though ICM issued a

28

pre-authorization letter stating that "An Innovative Care Management registered nurse has reviewed and authorized your requested medical services under the terms of the Coastwise Indemnity Plan," and "This authorization serves as a directive to the Coastwise Claims Office to pay for the above approved services," Defendants still denied Bay City's claim as not medically necessary and thus not covered by the Plan.

Plaintiffs Bay City, MPSP, M.I.S.T., Southbay, and Sharp Treatment received similar treatment from Defendants in numerous other cases. Ex. A.

### 3. Defendants' Misrepresentations Concern Past or Existing Material Facts, Not Future Conduct.

Defendants go on to argue that "the suggestion that the insurance verification calls constitute a misrepresentation … fails because any promise to pay for services concerns future conduct." Doc. 181 at p. 12. At the outset, Plaintiffs do not allege that the insurance verification calls constitute the misrepresentations on which their fraud and negligent misrepresentation claims are based. As explained above, the insurance verification calls are only relevant to show that Plaintiffs satisfied the condition stated in the ICM letters that pre-authorization of the healthcare services was subject to patients' eligibility to receive Plan benefits.

Rather, the actionable misrepresentations are the Plan's stating through its agent, ICM, that particular healthcare services were "authorized" and thus covered by the Plan when, in fact, they were not. Defendants' representations concerning plan coverage of particular patients and services were either: (a) true when made, in which case Plaintiffs do not have a viable fraud or negligent misrepresentation claim, but they do have a viable claim for failure to pay Plan benefits pursuant to ERISA § 502(a), *or* (b) false when made, in which case Plaintiffs do not have a viable claim for ERISA Plan Benefits (because the patients or services are not, in fact, covered by the Plan), but they do have a viable claim for fraud or negligent misrepresentation based on Defendants' false representations regarding Plan coverage that Plaintiffs relied

upon to their detriment.  Any such false representations regarding Plan coverage plainly concern *existing* material facts, not future conduct. *See, e.g., The Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1011 (9th Cir. 1995) (affirming trial court's decision that provider's negligent misrepresentation claim against self-funded plan based on misrepresentations of plan coverage were not ERISA-preempted, explaining "the claims arose because there was no plan coverage for the Friedels, which was the very fact misrepresented by Employers Health, to the detriment of The Meadows"); *Memorial Hospital v. Northbrook Life Insurance*, 904 F.2d 236, 245 (5th Cir. 1990) (holding that a third-party provider's independent claims for damages for misrepresentation of coverage against an ERISA plan were not ERISA-preempted).

WHEREFORE, Plaintiffs Bay City Surgery Center, Inc., Medical Plaza of San Pedro, Inc., PACU, Inc., Minimally Invasive Surgical Team of Glendale, Inc., and Southbay Spine Group, Inc. pray that the Court deny Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Fraud and Negligent Misrepresentation Claims Due to Lack of Evidence and ERISA Preemption, and grant Plaintiffs all such other and further relief to which they are justly entitled.

Dated: April 11, 2018.

Respectfully submitted,

STRASBURGER & PRICE, LLP

By: _____
    Charles "Scott" Nichols
    Jack G. Carnegie
    Zachary W. Thomas

And

WILLIAMS KHERKHER LAW FIRM

By: */s/ Armi Easterby* _____
    E. Armistead "Armi" Easterby
    Sean McCarthy

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2018, the foregoing document was served on all counsel of record by Notice of Electronic filing via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

Charles "Scott" Nichols